Aaron J. Schu (SBN 299701)
Aaron.Schu@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Suite 1500
San Diego, CA 92101
Telephone: 619-237-5200
Facsimile: 619-615-0700

*Attorney for Plaintiff Intake Breathing Technology, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Intake Breathing Technology, LLC,<br>Plaintiff,<br>v.<br>Chongqing Jiangjin Yuhongyou E-commerce Co., Ltd. d/b/a Mixalya, and<br>Raymond Sidhom,<br>Defendants. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, COPYRIGHT INFRINGEMENT, TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Intake Breathing Technology, LLC ("Intake" or "Plaintiff") brings this action for patent infringement under 35 U.S.C. § 271, copyright infringement under 17 U.S.C. § 501 *et seq.*, trade dress infringement, trademark infringement, and false designation of origin and unfair competition against Chongqing Jiangjin Yuhongyou E-commerce Co., Ltd. d/b/a Mixalya ("Mixalya") and Raymond Sidhom ("Sidhom") (collectively, "Defendants"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for (i) patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 *et seq.*, including infringement under 35 U.S.C. § 271(a); (ii) copyright infringement under 17 U.S.C. § 501 *et seq.*; (iii) common law trade dress infringement; (iv) trademark infringement under 15 U.S.C. § 1114; and (v) false designation of origin and unfair competition, 15 U.S.C. § 1125 *et seq*. By this action, Plaintiff seeks to prevent Defendants from infringing Plaintiff's intellectual property rights, causing confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

2. Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendants from directly infringing Plaintiff's U.S. Patent Nos. 9,510,969 (the "'969 Patent"), 10,556,095 (the "'095 Patent"), and 10,675,174 (the "'174 Patent") (collectively, the "Asserted Patents") and damages, expenses, and attorneys' fees arising from Defendants' willful infringement of the Asserted Patents; (ii) monetary damages and equitable relief for Defendants' infringement of Plaintiff's copyrights; and (iii) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendants from using Plaintiff's common law trade dress rights and Plaintiff's trademarks and unfairly competing with Plaintiff in connection with the distribution, advertising, promotion, offering for sale, and/or sale of the infringing products.

## II. THE PARTIES

3. Plaintiff, Intake Breathing Technology, LLC (“Plaintiff” or “Intake”) is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

4. On information and belief, Defendant Mixalya is a Chinese company with its principal place of business at No. 186, Jijiang Section, Binjiang Avenue, Jijiang Street, Jiangjin District, Chongqing, China.

5. On information and belief, Defendant Sidhom is an individual residing at 284 Rue de la Greve, Cacouna, Quebec, Canada, with a contact email of rino32015@yahoo.com. On information and belief, Defendant Sidhom is the sole proprietor of Sidhom Commerce, AKA Sidhom Trade.

6. On information and belief, Defendant Mixalya owns and operates an e-commerce website at mixalya.us through which it makes, uses, advertises, promotes, offers for sale, sells, distributes, and/or imports into the United States, including but not limited to under the brands “Mixalya”—which appears at the time of ordering—or “Yuanyuuo”—which appears on the product packaging, an example of which is depicted below—infringing magnetic nasal strip products and component parts, including StopSnoring™ nasal dilator kits (the “Accused Products”), including through the use of Plaintiff’s copyrighted images. Upon information and belief, Defendant Mixalya’s contact email is 2437478948@qq.com.






7. On information and belief, Defendant Sidhom holds himself out as an advertiser of the Accused Products. *See* **Exhibit 1**. On information and belief, Defendant Sidhom also holds himself out as the registrant and administrative contact for the Mixalya.us website, where the Accused Products are sold, including through the use of Plaintiff's copyrighted images. *See* **Exhibit 2**. Thus, on information and belief, Defendant Sidhom makes, uses, advertises, promotes, offers for sale, sells, and/or imports into the United States, the Accused Products, including but not limited to in operating the Mixalya.us website, advertising on Google ads, and advertising on social media platforms such as TikTok.

## III. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*, and the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*

9. The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

10. This Court has personal jurisdiction over Defendants because, among other reasons, and upon information and belief, Defendants have committed acts of patent, copyright, trademark, and trade dress infringement in this District, including at least through making, using, advertising, promoting, offering to sell, selling, and importing the Accused Products through the e-commerce website at mixalya.us. On information and belief, Defendants have substantial and continuous contacts in the State of California, they have purposefully availed themselves of the privilege of doing business in the State of California, and they have directed their infringing activities at the State of California. Further, Defendants have purposefully directed the Accused Products into the stream of commerce, knowing that the infringing

products would be sold in California, and the infringing products have in fact been sold in California.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because, on information and belief, Defendants have committed acts of infringement in this District through their e-commerce operations directed at consumers here. Alternatively, because Defendants are both foreign entities not residing in any judicial district, venue is proper under 28 U.S.C. § 1391(c)(3). *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972) (holding that foreign entities may be sued in any district).

## IV. FACTS AND BACKGROUND

### A. Plaintiff's Intellectual Property Rights

12. Plaintiff is the owner of all right, title, and interest in and to U.S. Patent Nos. 9,510,969 (the "'969 Patent"), 10,556,095 (the "'095 Patent"), and 10,675,174 (the "'174 Patent") (collectively, the "Asserted Patents"). True and correct copies of the Asserted Patents are attached as **Exhibits 3-5**, respectively.

13. The '969 Patent issued on December 6, 2016; the '095 Patent issued on February 11, 2020; and the '174 Patent issued on June 9, 2020. *See* Exs. 3-5.

14. The Asserted Patents were and are valid and enforceable at all times relevant to this action and are entitled to a presumption of validity under 35 U.S.C. § 282.

15. The '174 Patent is directed to a breathing system adapted to open a nasal passage. A representative picture of Plaintiff's magnetic nasal dilator system embodying the Asserted Patents, including the '174 Patent, is shown below:




16. The ’095 and ’969 Patents are directed to nasal adhesives that attach to the user’s nose and interact and cooperate with a breathing system apparatus. A representative picture of Plaintiff’s nasal adhesive product embodying the ’095 and ’969 Patents is shown below:




17. Plaintiff’s patented nasal adhesives are used as part of Plaintiff’s innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

18. The patented nasal dilator technology in the Asserted Patents was

invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose. This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

19. The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motorsports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

20. Plaintiff's product line embodying the Asserted Patents and displaying Plaintiff's distinctive trade dresses under the brand name "Intake®" ("Plaintiff's Products") are sold exclusively under the Intake brand by Plaintiff and its distributors, including through Intake's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms.

21. Plaintiff's Products have been hugely successful and after being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

22. Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilator products, including its nasal dilator system as a whole as well as the magnetic nasal band (marketed as the "Relief Band"), magnetic applicator, and nasal adhesive tabs which make up the system's component parts, as well as Intake's product packaging, all of which are pictured below:













23. Each of these product components and products constitutes a separate and independently protectable trade dress.

24. Plaintiff's rights in the Relief Band trade dress consists of the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of

these elements.

25. The Relief Band trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

26. In the minds of consumers, the Relief Band trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the Relief Band trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the Relief Band trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the Relief Band; and (e) consumer association of the Relief Band trade dress with Intake as the source of the product.

27. The Relief Band trade dress is non-functional.

28. Alternative designs exist that would permit competitors to manufacture rigid, magnetic, nasal bands without copying the distinctive overall appearance of Intake's Relief Band.

29. Plaintiff's rights in the magnetic applicator trade dress consists of the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements.

30. The magnetic applicator trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

31. In the minds of consumers, the magnetic applicator trade dress has

come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the magnetic applicator trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the magnetic applicator trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the magnetic applicator; and (e) consumer association of the magnetic applicator trade dress with Intake as the source of the product.

32. The magnetic applicator trade dress is non-functional.

33. Alternative designs exist that would permit competitors to manufacture applicator devices without copying the distinctive overall appearance of Intake's magnetic applicator.

34. Plaintiff's rights in the nasal adhesive tab trade dress consists of the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

35. The nasal adhesive tab trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c)

Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the nasal adhesive tabs; and (e) consumer association of the nasal adhesive tab trade dress with Intake as the source of the product.

36. The nasal adhesive tab trade dress is non-functional.

37. Alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying the distinctive overall appearance of Intake's nasal adhesive tabs.

38. In addition to the independently protectable trade dress of each component, Intake also owns common law trade dress rights in the overall presentation of its integrated nasal dilator system, including the distinctive packaging and unified product offering.

39. The overall product system trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

40. In the minds of consumers, the overall product system trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the overall product system trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the overall product system trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the overall product system; and (e) consumer association of the overall product system trade dress with Intake as the source of the product.

41. The overall product system trade dress is non-functional.

42. Through Intake's extensive marketing efforts, consistent product

presentation, and service to over one million customers, consumers encountering products displaying any of the foregoing trade dress immediately identify such products as originating from Intake.

43. Intake possesses valid and enforceable common law trade dress rights in each of the foregoing trade dress elements.

44. Plaintiff also holds all right, title, and interest in and to U.S. Trademark Reg. No. 5,752,925 (the "'925 Registration") for the mark INTAKE in standard characters (the "INTAKE Mark"), a true and correct copy of which is attached as **Exhibit 6**.

45. The '925 Registration was duly and lawfully issued by the United States Patent and Trademark Office on May 14, 2019, for the INTAKE Mark in international class 10 in connection with nasal dilation devices. (*See* Ex. 6.)

46. On November 21, 2019, the '925 Registration was duly and legally assigned to Plaintiff.

47. The '925 Registration is valid and subsisting, and is *prima facie* evidence of Plaintiff's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods. (*See* Ex. 6.) The '925 Registration is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b), as Intake filed the required Section 15 affidavit on June 14, 2024.

48. The INTAKE Mark has been in use in the United States in connection with nasal dilation devices since at least as early as December 3, 2018.

49. Plaintiff is also the owner of all rights in the copyrights for its images related to its nasal dilator system, including, but not limited to, images of related product components, packaging, and models demonstrating the use of its products.

50. On January 2, 2025, the Copyright Reg. No. VAu 1-542-204 (the "'204 Registration") entitled "Intake Breathing System" was duly and legally issued by the United States Copyright Office. A copy of the '204 Registration is attached as

**Exhibit 7**.

51. The ’204 Registration covers a group of Plaintiff’s copyrighted photographs of its nasal dilator system, models demonstrating the use of the system, and product packaging associated with the system, including for example the registered images below:







52. Plaintiff’s copyrighted images also include photographs with models displaying how to wear and use the nasal dilator system, such as the registered photographs below:




53. Defendants are not licensed under the Asserted Patents or any other Intake patents and are not authorized to practice the inventions claimed therein.

54. Defendants are not authorized to use, copy, or mimic Plaintiff's trade dress, nor any confusingly similar variations thereof.

55. Defendants are not authorized to use or imitate Plaintiff's trademark, nor any confusingly similar variations thereof.

56. Defendants are not authorized to use, reproduce, copy, display, or distribute Plaintiff's copyrighted images of Plaintiff's Products, packaging, and models demonstrating the use of Plaintiff's Products, nor any derivative thereof.

**B. Defendants' Unlawful Conduct**

57. Mixalya.us is an e-commerce website through which Defendants make, use, advertise, promote, offer for sale, sell, and/or import into the United States the Accused Products, including through the use, display, and copying of Plaintiff's copyrighted images.

58. The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's patents and other intellectual property. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers—including

Defendants—have entered the market with infringing products that attempt to mimic Plaintiff's Products and that infringe on its patents, copyrights, trademarks, and trade dress rights. Because of this ongoing infringement, Plaintiff is currently losing sales in at least the five-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

59. Defendants have previously and are currently making, using, selling, advertising, promoting, offering for sale, distributing, and/or importing into the United States the Accused Products that imitate Plaintiff's genuine products, infringe the Asserted Patents, infringe Plaintiff's copyrights, and infringe on Plaintiff's trademark and trade dress rights.

60. A representative webcapture of the Accused Products as listed and advertised on mixalya.us is reproduced below and attached hereto as **Exhibit 8**.



61. Additional representative images of the Accused Products as they arrive when ordered from mixalya.us are reproduced below:









62. The Accused Products meet multiple claims of the Asserted Patents.

63. Publicly available materials, including the products themselves and Defendants' advertising on the Mixalya.us website, confirm that the Accused Products practice the claimed elements of the Asserted Patents.

64. Specifically, Plaintiff's claim charts show that the Accused Products

infringe at least claim 1 of the ’174 Patent, claim 1 of the ’095 Patent, and claim 1 of the ’969 Patent. The representative claim charts are attached as **Exhibits 9-11**.

65. The unauthorized making, using, advertising, promoting, offering for sale, selling, distributing, and/or importing into the United States of the Accused Products constitutes direct infringement under 35 U.S.C. § 271(a).

66. On information and belief, Defendants are willfully infringing the Asserted Patents since at least the filing and service of this Complaint. Despite having been put on notice of the infringement, Defendants have continued to maintain active listings for the Accused Products on the Mixalya.us website.

67. The Mixalya.us website also displays and distributes Plaintiff’s copyrighted images, product listing images, and marketing materials without authorization, including images protected by at least Copyright Registration Number VAu 1-542-204. Defendants’ unauthorized reproduction, display, and distribution of Plaintiff’s copyrighted materials constitutes willful copyright infringement under 17 U.S.C. § 501.

68. In particular, Defendants advertise the Accused Products using images that infringe on Plaintiff’s copyrighted images, including at least the images below, exactly and/or as infringing derivative works:

<table>
<tr><th>Defendants' Infringing Image</th><th>Plaintiff's Copyrighted Image</th></tr>
<tr><td>


</td><td>


</td></tr>
<tr><td>


</td><td>


</td></tr>
</table>

69. The Accused Products also imitate Plaintiff's trade dress in its nasal dilator system and component parts, and in its packaging, creating a likelihood that consumers will be confused into believing the Accused Products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

70. The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component

parts, including because the Accused Products use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

71. The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts because the Accused Products use the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish and the overall visual impression created by the combination of these elements.

72. The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts because the Accused Products use images of and are nasal adhesive tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

73. The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's product packaging because the Accused Products' packaging uses a clean, minimalist white background behind a prominent professional photograph of a smiling male model wearing the nasal dilator product, positioned as the dominant visual element of the package face; the specific layout hierarchy featuring the model photograph above descriptive text with a circular badge element at the right-center; the circular badge displaying product quantity in large numerals surrounded by curved descriptive text including "ONCE DAILY"; the "Sleep and Sport" product descriptor beneath the product name; the

vertical/portrait orientation of the card; and the overall visual impression created by the combination of these elements.

74. For example, a comparison of the Accused Products available on mixalya.us with Plaintiff's genuine products demonstrates Defendants' infringement of Plaintiff's trade dress rights in the overall commercial image and appearance of Plaintiff's nasal adhesive tab products and its packaging:

| The Infringing Accused Products | Plaintiff's Genuine Products |
| --- | --- |
|  |  |
|  |  |

75. On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Plaintiff's trade dresses, Defendants have blatantly infringed the same with the ornamental design of the Accused

Products and product packaging, as well as by advertising the Accused Products using images of products that use Plaintiff's trade dress.

76. The Accused Products are identical and/or legally identical to Plaintiff's Products because, inter alia, they are nasal adhesive tabs configured for use with Plaintiff's magnetic nasal dilation system.

77. Defendants have used, and continue to use, without authorization, the INTAKE Mark, including but not limited to uses in advertising such as in product photos and instruction manuals, as depicted below:




78. The channels of trade used by Plaintiff and Defendants are the same and, at a minimum, overlapping. For example, both Plaintiff and Defendants offer nasal dilator products on publicly-available e-commerce webpages. The mixalya.us website sources and sells products to consumers on platforms including social media and other e-commerce channels where Plaintiff also sells its products.

79. Defendants are not authorized to use any of Plaintiff's intellectual

property, including Plaintiff's patents, trade dresses, trademarks, and copyrights.

## V. COUNT I

## PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '174 PATENT

80. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

81. Plaintiff is the exclusive owner of all rights, title, and interest in and to the '174 Patent, titled "Breathing System," duly and legally issued by the United States Patent and Trademark Office on June 9, 2020, including the right to bring this suit for injunctive relief and damages. *See* Ex. 3.

82. The '174 Patent is valid and enforceable.

83. Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '174 Patent, including at least representative claim 1 of the '174 Patent, by making, using, offering for sale, selling, advertising, promoting, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

84. The Accused Products satisfy all claim limitations of at least one claim of the '174 Patent. *See* Ex. 9 (comparing representative claim 1 of the '174 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

85. By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the '174 Patent pursuant to 35 U.S.C. § 271(a).

86. Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the '174 Patent since at least the date of service of

this Complaint.

87. Defendants have profited from their infringement of the ’174 Patent.

88. Defendants are not licensed or otherwise authorized by Plaintiff to practice the claims of the ’174 Patent.

89. As a direct and proximate cause of Defendants’ infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendants’ infringing activities are immediately enjoined.

90. Defendants’ making, using, selling, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

91. Defendants’ continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants’ continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

92. Defendants’ infringement of the ’174 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## VI. COUNT II

## PATENT INFRINGEMENT (35 U.S.C. § 271) – THE ’095 PATENT

93. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

94. Plaintiff is the exclusive owner of all rights, title, and interest in and to the ’095 Patent, titled “Google Breathing System,” duly and legally issued by the United States Patent and Trademark Office on February 11, 2020, including the right to bring this suit for injunctive relief and damages. *See* Ex. 4.

95. The ’095 Patent is valid and enforceable.

96. Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the ’095 Patent, including at least representative claim 1 of the ’095 Patent, by making, using, offering for sale, selling, advertising, promoting, and/or importing the Accused Products in violation of 35 U.S.C. § 271(a).

97. The Accused Products satisfy all claim limitations of at least one claim of the ’095 Patent. *See* Ex. 10 (comparing representative claim 1 of the ’095 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

98. By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the ’095 Patent pursuant to 35 U.S.C. § 271(a).

99. Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the ’095 Patent since at least the date of service of this Complaint.

100. Defendants have profited from their infringement of the ’095 Patent.

101. Defendants are not licensed or otherwise authorized by Plaintiff to practice the claims of the ’095 Patent.

102. As a direct and proximate cause of Defendants’ infringing activities,

Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are immediately enjoined.

103. Defendants' making, using, selling, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

104. Defendants' continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants' continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

105. Defendants' infringement of the '095 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## VII. COUNT III

## PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT

106. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

107. Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages. *See* Ex. 5.

108. The '969 Patent is valid and enforceable.

109. Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the ’969 Patent, including at least representative claim 1 of the ’969 Patent, by making, using, offering for sale, selling, advertising, promoting, and/or importing the Accused Products in violation of 35 U.S.C. § 271(a).

110. The Accused Products satisfy all claim limitations of at least one claim of the ’969 Patent. *See* Ex. 11 (comparing representative claim 1 of the ’969 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

111. By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the ’969 Patent pursuant to 35 U.S.C. § 271(a).

112. Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the ’969 Patent since at least the date of service of this Complaint.

113. Defendants have profited from their infringement of the ’969 Patent.

114. Defendants are not licensed or otherwise authorized by Plaintiff to practice the claims of the ’969 Patent.

115. As a direct and proximate cause of Defendants’ infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendants’ infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the

future unless Defendants' infringing activities are immediately enjoined.

116. Defendants' making, using, selling, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

117. Defendants' continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants' continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

118. Defendants' infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## VIII. COUNT IV

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

119. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

120. Plaintiff is the sole owner of valid copyrights in its images, videos, websites, marketing materials, and other works covering images of Plaintiff's nasal dilator system, its packaging, and models demonstrating how to wear and use the system, including but not limited to the photographs registered in the '204 Registration.

121. Defendants have copied, reproduced, displayed, distributed, modified, used, and/or created derivative works of Plaintiff's copyrighted materials without authorization, including for example by displaying and distributing Plaintiff's copyrighted images, website content, product listing images, and marketing materials on mixalya.us in connection with the advertising, promotion, and sale of

the Accused Products.

122. Defendants' unauthorized copying, reproduction, display, distribution, modification, use, and/or creation of derivative works of Plaintiff's copyrighted materials constitutes copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

123. Defendants' copyright infringement has been willful and intentional. Defendants knew or should have known of Plaintiff's rights in the copyrighted images since Defendants' first infringing conduct and have willfully and intentionally infringed Plaintiff's exclusive rights in the copyrighted images under 17 U.S.C. § 106.

124. As a direct and proximate result of Defendants' copyright infringement, Plaintiff has been damaged in an amount to be proven at trial. Plaintiff is entitled to recover its actual damages and any additional profits of Defendants attributable to the infringement, or in the alternative, statutory damages, pursuant to 17 U.S.C. §§ 504(b) and (c), as well as Plaintiff's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

125. Plaintiff Intake has suffered and continues to suffer irreparable injury from Defendants' conduct, and Plaintiff has no adequate remedy at law to protect its rights in its copyrighted images and to prevent Defendants from continuing their infringement and continuing the resulting injury to Plaintiff.

126. As a direct and proximate result of the copyright infringement detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendants from infringing its copyrighted images.

## IX. COUNT V

## TRADE DRESS INFRINGEMENT (COMMON LAW)

127. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

128. Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts and in its packaging.

129. Plaintiff's trade dress rights consists of (1) the total image and overall appearance of Plaintiff's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; (2) the total image and overall appearance of Plaintiff's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Plaintiff's travel case; and the overall visual impression created by the combination of these elements; and (3) the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements; including each of these sets of features together in Plaintiff's dilator nasal system as well as individually as its component parts.

130. Plaintiff's trade dress rights also consist of the total image and overall appearance of Plaintiff's packaging, including at least the following distinctive, non-functional, ornamental elements: the clean, minimalist white background behind a prominent professional photograph of a smiling male model (here with wavy brown hair and facial hair) wearing the nasal dilator product, positioned as the dominant visual element of the package face; the specific layout hierarchy featuring the model photograph above descriptive text with a circular badge element at the right-center; the circular badge displaying product quantity in large numerals surrounded by

curved descriptive text including “ONCE DAILY”; the “Sleep and Sport” product descriptor beneath the product name; the vertical/portrait orientation of the card; and the overall visual impression created by the combination of these elements, which conveys a premium, clinical, modern aesthetic.

131. Plaintiff’s trade dresses are non-functional and do not yield any utilitarian advantage.

132. Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Plaintiff’s distinctive trade dresses. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Plaintiff’s unique, signature ornamental designs. The availability of these alternative designs demonstrates that Plaintiff’s trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake’s distinctive product appearance.

133. Plaintiff’s trade dresses have secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

134. Plaintiff has been advertising and selling its patented nasal dilator system since at least 2019 as a unique and original creation.

135. Defendants’ public display, advertising, promoting, offering for sale, and sale of the Accused Products is likely to cause confusion in the marketplace as to the source of the product.

136. Plaintiff’s trade dresses are strong, unique, and have secondary meaning. The Accused Products are substantially similar to Plaintiff’s trade dresses in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

137. Specifically, the Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least because the Accused Products use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

138. The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least because the Accused Products' applicator uses the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Plaintiff's travel case, and the overall visual impression created by the combination of these elements.

139. The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least because Defendants' advertisements use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

140. The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's product packaging at least because the Accused Products' packaging uses a clean, minimalist white background behind a prominent professional photograph of a smiling male model wearing the nasal dilator product, positioned as the dominant visual element of the package face; the specific layout hierarchy featuring the model photograph above descriptive text with a circular badge element at the right-center; the circular badge displaying product

quantity in large numerals surrounded by curved descriptive text including "ONCE DAILY"; the "Sleep and Sport" product descriptor beneath the product name; the vertical/portrait orientation of the card; and the overall visual impression created by the combination of these elements.

141. The Accused Products and Plaintiff's Products are both nasal dilator systems which have been presented to customers in the same channels of trade, namely, via e-commerce. On information and belief, the goods travel in the same marketing channels, including on social media.

142. Defendants' advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Intake's trade dresses in violation of California common law.

143. As a direct and proximate result of Defendants' trade dress infringement, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiff, for which there is no adequate remedy at law, and for which Intake is entitled to injunctive relief.

144. As a direct and proximate result of Defendants' infringement of Plaintiff's trade dresses, Plaintiff has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendants.

## X. COUNT VI

## TRADEMARK INFRINGEMENT

## (15 U.S.C. § 1114)

145. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-79 as if separately repeated herein.

146. Defendants' actions constitute trademark infringement under 15 U.S.C. § 1114.

147. Plaintiff holds all right, title, and interest in and to the '925

Registration. The ’925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The ’925 Registration is *prima facie* evidence of Plaintiff’s exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

148. The INTAKE Mark has been continuously used to market and sell nasal dilator systems since at least as early as 2018. The INTAKE Mark is inherently distinctive and has acquired secondary meaning.

149. Defendants have used, and continue to use, without authorization, the INTAKE Mark, including but not limited to uses in the Accused Products’ instruction manuals.

150. Because of Defendants’ unauthorized use of the INTAKE Mark, Plaintiff’s customers, and consumers in general, are likely to mistakenly believe the Accused Products originate from and/or are affiliated with Plaintiff.

151. Accordingly, Defendants’ use of the INTAKE Mark has caused and/or is likely to cause consumers to mistakenly believe the Accused Products originate from, are sponsored by, and/or are affiliated with Intake, constituting trademark infringement.

152. Upon information and belief, Defendants’ infringement is intentional, willful, and/or in reckless disregard of Intake’s trademark rights in its INTAKE Mark.

153. By infringing the INTAKE Mark, Defendants have caused Plaintiff to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Intake for Defendants’ infringement.

154. If Defendants’ infringement is not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary reward.

155. Defendants’ infringement of the INTAKE Mark is exceptional and

entitles Plaintiff to attorneys' fees incurred in prosecuting this action under 15 U.S.C. § 1117(a).

## XI. COUNT VII

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

## (15 U.S.C. § 1125(A))

156. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 as if separately repeated herein.

157. Defendants' actions constitute false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), by using in commerce a false designation of origin and a false or misleading representation of fact which is likely to cause confusion as to the origin, sponsorship, or approval of the Accused Products in connection with Plaintiff's common law trade dress rights in its nasal dilator system and component parts and Plaintiff's registered INTAKE trademark.

158. Plaintiff owns all right, title, and interest in and to the '925 Registration. The '925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '925 Registration is *prima facie* evidence of Intake's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

159. Defendants are not authorized to use the INTAKE Mark, any variation thereof, or any mark confusingly similar to the INTAKE Mark.

160. Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts and in its packaging.

161. Plaintiff's trade dress rights consist of (1) the total image and overall appearance of Plaintiff's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these

elements; (2) the total image and overall appearance of Plaintiff's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Plaintiff's travel case; and the overall visual impression created by the combination of these elements; and (3) the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements; including each of these sets of features together in Plaintiff's dilator nasal system as well as individually as its component parts.

162. Plaintiff's trade dress rights also consist of the total image and overall appearance of Plaintiff's packaging, including at least the following distinctive, non-functional, ornamental elements: the clean, minimalist white background behind a prominent professional photograph of a smiling male model (here with wavy brown hair and facial hair) wearing the nasal dilator product, positioned as the dominant visual element of the package face; the specific layout hierarchy featuring the model photograph above descriptive text with a circular badge element at the right-center; the circular badge displaying product quantity in large numerals surrounded by curved descriptive text including "ONCE DAILY"; the "Sleep and Sport" product descriptor beneath the product name; the vertical/portrait orientation of the card; and the overall visual impression created by the combination of these elements, which conveys a premium, clinical, modern aesthetic.

163. Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

164. Numerous alternative designs are available that would permit

competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Plaintiff's distinctive trade dresses. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Plaintiff's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Plaintiff's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

165. Defendants have made, used, advertised, promoted, and/or sold, and continue to do so, without authorization, product designs that are confusingly similar to Plaintiff's trade dresses, as well as Plaintiff's registered INTAKE Mark, to advertise, sell, and offer for sale products that unfairly compete with Plaintiff's legitimate products in the same channels of trade, including on e-commerce platforms.

166. Defendants' making, using, advertising, promoting, and/or sale of the product designs that are confusingly similar to Plaintiff's trade dresses and Plaintiff's registered INTAKE Mark is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of the Accused Products, or as to an affiliation, connection, or association between Defendants and Plaintiff.

167. the Accused Products' product designs are confusingly similar to Plaintiff's trade dresses and adoption and use of Plaintiff's registered INTAKE Mark constitutes a false designation of origin and a false or misleading representation of fact in violation of 15 U.S.C. § 1125(a), in that it misrepresents the origin of the Accused Products and causes consumers to believe they are purchasing products originating from, sponsored by, or affiliated with Plaintiff.

168. Defendants therefore use Plaintiff's trade dresses and registered INTAKE Mark to unfairly compete with Plaintiff and/or redirect sales to Defendants for infringing products that would have otherwise been directed to Plaintiff.

169. Defendants' false designation of origin and unfair competition is intentional, willful, and/or in reckless disregard for Plaintiff's common law trade dress rights in its nasal dilator system and component parts and packaging and Plaintiff's registered INTAKE Mark.

170. As a direct and proximate cause of Defendants' false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), Defendants have caused Plaintiff to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Plaintiff for Defendants' wrongful actions.

171. If Defendants' false designation of origin and unfair competition in violation of Plaintiff's common law trade dress rights and rights in its registered INTAKE Mark are not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary award.

172. Defendants' false designation of origin and unfair competition is exceptional and entitles Plaintiff to attorneys' fees incurred in prosecuting this action under 15 U.S.C. § 1117(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants on the claims set forth above and respectfully requests that this Court:

A. Enter judgment against Defendants finding that Defendants (i) have directly infringed, literally or under the doctrine of equivalents, one or more claims of each of the Asserted Patents, (ii) have infringed Plaintiff's copyrights, (iii) have

infringed Plaintiff's trade dress rights in violation of common law trade dress rights, (iv) have infringed Plaintiff's trademark under 15 U.S.C. § 1114, and (v) have committed acts of false designation of origin and unfair competition in violation of Plaintiff's rights.

B. Enter judgment against Defendants finding that Defendants have willfully directly infringed one or more claims of the Asserted Patents, willfully infringed Plaintiff's copyrights, willfully infringed Plaintiff's common law trade dress rights, willfully infringed Plaintiff's trademark, and that Defendants' false designation of origin and unfair competition have also been willful;

C. Temporarily, preliminarily, and permanently enjoin Defendants, their affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendants:

1) from making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patents, including the Accused Products;

2) from any further acts of copyright infringement;

3) from any further acts of trade dress infringement, including selling or advertising the Accused Products;

4) from any further acts of trademark infringement; and

5) from any further acts of unfair competition;

D. Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendants' patent infringement, pursuant to 35 U.S.C. § 284, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

E. Award Plaintiff its actual damages resulting from, and any profits that Defendants derived from, Defendants' trademark and trade dress infringement, and

for their false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§ 1125 and 1117;

F. Award Plaintiff all additional available and legally permissible damages and relief adequate to compensate Plaintiff for Defendants’ trademark and trade dress infringement including corrective advertising damages, costs and reasonable attorneys’ fees under 15 U.S.C. §§ 1125 and 1117;

G. Award Plaintiff statutory damages in the amount of $150,000 per infringing work for Defendants’ copyright infringement in an amount to be determined at trial, pursuant to 17 U.S.C. § 504(c), and Plaintiff’s costs and reasonable attorneys’ fees pursuant to 17 U.S.C. § 505;

H. Award Plaintiff its actual damages, direct and indirect, for Defendants’ copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendants’ acts of willful infringement;

I. Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

J. Declare Defendants’ patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

K. Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys’ fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply;

L. Award Plaintiff its costs, including attorneys’ fees, and an assessment of interest, for Defendants’ copyright infringement;

M. Award Plaintiff its costs and expenses incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 284, Rule 54(d) of the Federal Rules of Civil Procedure, and all other applicable statutes and rules in the common law as

may apply; and

N. Award Plaintiff any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Dated this 14th day of August, 2026.

*/s/ Aaron J. Schu*

AARON J. SCHU
QUARLES & BRADY LLP
101 West Broadway, Suite 1500
San Diego, CA 92101
Telephone: 619-237-5200
Facsimile: 619-615-0700
aaron.schu@quarles.com

*Attorney for Plaintiff Intake Breathing Technology, LLC*